# Riddle & Pennock's Appeal.

*Informal Recognisance.—Lien of Dower as against Sheriff's Vendee.— Distribution between Heirs and Judgment-Creditors.*

1. Where the records of the Orphans' Court show an inquisition and appraisement of property adjudged to one, "upon his entering in recognisance, with security, to pay the heir one-third in three months, and the balance in nine months, and to pay the interest on the widow's portion annually, and, at her death, the principal to the heirs, according to the Act of Assembly," and he became bound by recognisance, with surety duly acknowledged before the clerk, it became a lien upon the land taken by the cognisor, from its date, though no penalty was inserted, and it was informally drawn.

2. Where a levy was made on lands charged with the widow's third in owelty of partition, and the widow died between the levy and the sale, it was held that the sheriff's vendee took the land discharged of the lien.

3. In the distribution of the proceeds of a sheriff's sale of the land taken by cognisor, the administrator of the widow, after her death, and the heirs, were held to be entitled to the portion of the valuation due at her death, in preference to the holders of a judgment obtained against the cognisor, after the date of the recognisance.

4. The principles which govern liens of judgments in the Common Pleas, do not apply to liens for owelty of partition in the Orphans' Court. The

1 WR.—12

[Riddle & Pennock's Appeal.]

one is on the line of the title, and must be looked for in the proceedings in partition; the other is outside of it.

5. The Act of Assembly has prescribed no form for recognisance in the Orphans' Court: an obligation of record in any form, taken before the court or its clerk, is sufficient.

APPEAL from the Common Pleas of *Jefferson county.*

This was an appeal by Riddle, Pennock & Co., Speering, Good & Co., and Kay & Dehaven, from the decree of the court, distributing the proceeds of the sheriff's sale of the real estate of Thomas S. Mitchell.

The real estate of Mitchell had all been sold by the sheriff, and the proceeds brought into court for distribution. Among the property sold, there was one tract known as the "Wachob Farm," which produced $1610, and this was the only portion of the proceeds of sale about which there was any controversy. This farm had been the property of one James Wachob. After his death, Mitchell purchased four undivided eleventh parts of the farm, from four of the eleven heirs of the deceased. Afterwards, on proceedings in partition had in the Orphans' Court, he accepted the land at the valuation, and entered into the following recognisance :—

In the matter of the estate of } In the Orphans' Court of James Wachob, deceased. } Jefferson county to No. 1 of } Feb. Term, A.D. 1853.

We Thomas S. Mitchell merchant and James Means merchant of the township of Perry Jefferson County Penn\*. acknowledge ourselves to be indebted to the Commonwealth of Pennsylvania in the sum of                to be levied of our goods chattels, lands and tenements of each of us, The condition of this recognisance is such that if the above named Thomas S.
to the heirs and legal representatives of said Dec'd
Mitchell does well and truly pay ⋀ the amount of the valuation of the Real Estate as valued by inquest on the 13ʰ day of April A.D. 1853 then the above recognisance to be void, otherwise to
costs included
be and remain in full force and virtue.

Taken and acknowledged before me } THOMAS S. MITCHELL the 15, of September 1854 } JAMES MEANS
WM. M'CANDLESS       }
        Clerk of O. C. }
    Witness present
    GEORGE BROWN                Endorsed.   Sept. 1854, Filed.

About three years after the filing of this recognisance, on the petition of certain of the heirs, a citation was issued, and the recognisance was amended by filling up the blank with the penal sum of $600.

The judgments of the appellants against Mitchell, under which

his real estate, including this farm, was sold, had been recovered before this amendment. The widow of James Wachob, who was living at the time the levy was made, died before the sheriff's sale took place.

The administrator of Sarah Wachob, the widow, and the unpaid heirs of James Wachob, appeared before the auditor, and claimed out of the proceeds of this farm. the arrears of interest due to the widow, and the shares due the heirs, in preference to the judgment-creditors of Mitchell.

The auditor decided that the widow's third remained a lien on the real estate in the hands of the purchaser, and distributed the fund in court to the unpaid heirs of James Wachob, and to the creditors of Mitchell.

On exceptions filed, the court (McCALMONT, P. J.) reversed the auditor's report in respect to the lien of the widow's third, decreed to her administrator the arrears of interest, and to the heirs of James Wachob the shares due to them, under the recognisance, at the widow's death, and distributed the balance, *pro rata*, on the judgments of Riddle, Pennock & Co., Speering, Good & Co., and Kay & Dehaven.

From this decree the said judgment-creditors appealed to this court, assigning it for error.

*Silas M. Clark*, for appellant.—The recognisance was defective : it was not a compliance with the decree on the partition in the Orphans' Court. The heirs, therefore, retained the title to the land, and could not avail themselves of the lien of this recognisance, so as to entitle them to any portion of the proceeds of the sale of Mitchell's interest: Smith *v.* Scudder, 11 S. & R. 325; Bellas *v.* Evans, 3 P. Rep. 479.

The amendment might avail as between Mitchell and the heirs, for all, except the widow's third.

Prior to this amendment there was no record notice of the amount of the lien: 16 S. & R. 347; 7 Barr 184; 1 Id. 14; Thomas's Appeal, 5 W. & S. 44; Hartman's Appeal, 9 Harris 490.

The penal sum as inserted, being only $600, will not justify the abstraction of the $1020.88 decreed to the widow and heirs. The docket must govern: Bear *v.* Patterson, 3 W. & S. 236; Water's Appeal, 11 Casey 523.

The widow's interest was real estate : Miller *v.* Leidig, 3 W. & S. 458.

Her annual interest was collectable as rent. She and her heirs must look to the land.

Four shares of the land belonged to Mitchell before the partition. The property did not bring two-thirds of the appraised value, yet the court gave the heirs their full shares under the

recognisance.   The widow was in full life at the levy, and had a legal estate in the land; she died before the sale.   If the purchaser can hold the land, discharged of her estate, then a greater estate was sold on the *vend. ex.* than was taken under the *fi. fa.*

*P. W. Jenks*, for appellee.—By a judicial sale, all liens which are certain, or which can be made so, are discharged, except mortgages and widow's thirds: Reed *v.* Reed, 1 W. & S. 235; Spring Garden's Appeal, 8 Id. 444; Bantelon *v.* Smith, 2 Binn. 146; Swan's Appeal, 1 Barr 94; McClanahan *v.* Wyant, 1 P. R. 112.

The title to the Wachob Farm was in Mitchell at the sale, subject to the shares of the widow and heirs.   The recognisance was good in law without a penalty.   A minute on the docket is sufficient: Hartman's Appeal, 9 Harris 488; Cubbage *v.* Nesmith, 3 Watts 314.   The lien dates from the decree.   The Orphans' Court's docket gave notice to purchasers and creditors as to Mitchell's interest in the land.

The opinion of the court was delivered, October 28th 1860, by
STRONG, J.—This appeal has no solid ground to rest upon, unless the assumption of the appellants be admitted, that no valid recognisance had been entered into by Thomas S. Mitchell before their judgments were obtained against him.   That assumption, however, cannot be allowed.   The records of the Orphans' Court show that the property was appraised by the inquest at $2558, on the 13th of April 1853.   The inquisition was confirmed, and, on the 15th of September 1854, the land was adjudged to Thomas S. Mitchell "upon his entering into recognisance with security to pay the heirs one-third in three months, and balance in nine months, and to pay the interest on the widow's portion annually, and at her death the principal to the heirs, according to the Act of Assembly."   James Means was approved as surety. On the same day a paper purporting to be a recognisance was acknowledged by both Mitchell and Means before the clerk of the Orphans' Court, and filed of record.   It was informally drawn.   It acknowledged an indebtedness to the Commonwealth, but in no specified sum, and declared that the condition of the recognisance was that it should be void if Mitchell should well and truly pay to the heirs and legal representatives of James Wachob the amount of the valuation of the real estate as valued by the inquest, on the 13th of April 1853. ⸱ The defect alleged is, that there was no penalty inserted.   But what of that ?   The amount of the real debt is certain, made so by reference to the inquisition.   And it cannot be doubted that the instrument created a legal liability to the heirs and legal representatives of

the decedent. It is useless to inquire what must have been the form of the action to enforce it, for if it imposed a legal obligation it was a recognisance. A recognisance is a debt of record entered into, or acknowledged before a court or officer having authority to take it. The form is not essential. Though usually in the form of a penal obligation, it is not necessarily so. It need not even be signed by the cognisor, and a short memorandum of it is sufficient. The legislature has prescribed no form for recognisances given in partition in the Orphans' Court, and therefore an obligation of record in any form taken before the court or its clerk is sufficient. In this case, the omission of the clerk to insert a penalty was supplied in 1858 by leave of the court, not, it is true, until after the appellant's judgment was recovered. But we are of opinion that the obligation assumed by Mitchell at the time when the land was adjudged to him, was a sufficient recognisance to create a lien upon the land taken at the valuation, and that the amendment was but the correction of a clerical omission of a matter of form. But it is said that, previous to the insertion of a penalty in the recognisance in 1858, or, as it is called, the amendment of the recognisance, there was nothing upon the record to show any amount of the lien intended to be created, and therefore there could be no claim. The argument is an attempt to apply to liens for owelty of partition in the Orphans' Court the principles which govern the liens of judgments in the Courts of Common Pleas. They are, however, entirely unlike. The one is in the line of the title, the other is outside. An Act of Assembly has declared that a judgment docket shall be kept in the Common Pleas. This is for the information of subsequent lien-creditors and purchasers. No such requirement exists respecting liens in the Orphans' Court. To ascertain the amount of such liens the purchaser or creditor must look to the proceedings in partition, and if the appellants in this case looked there, they discovered the amount of the encumbrance upon Mitchell's land. It was of course measured by the valuation, and the parties to the partition. It is, therefore, a mistake to urge that there was nothing upon record to show the amount of the lien.

Again, it is contended that the recognisance was not taken for the security of the widow, and that she had nothing but her statutory charge. From this it is inferred that the purchaser at the sheriff's sale took the land encumbered by her third, and, therefore, that it was erroneous to distribute to the heirs and administrator of the widow that portion of the valuation which became due at her death or the interest thereon in arrears. The widow, however, had died before the sheriff's sale, and consequently the land was sold discharged of the third which was payable to the heirs after her death. The amount of the lien and

[Riddle & Pennock's Appeal.]

its interest was then ascertainable, and there was no reason for its remaining longer an encumbrance. It had become payable by the express provisions of the Act of Assembly; and, although the widow died after the levy under the *fi. fa.*, yet, as her death was before the sale, the purchaser took the land disencumbered of the charge, and the proceeds of the sale were properly appropriated to the owners of the charge. Nor was this, as is supposed, selling a greater estate than was levied upon. The land was the subject of the levy, not any particular interest therein, and the land was sold.

There is, therefore, no error in the appropriation, and the decree of the Court of Common Pleas is affirmed.